**STATE of Missouri, Respondent,**

v.

**Michael Eugene BRAYFIELD, Appellant.**

**No. 9967.**

Missouri Court of Appeals,
Springfield District.

Aug. 17, 1976.

John Pratt, Springfield, for appellant.

John C. Danforth, Atty. Gen., Nanette Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

Before HOGAN, P. J., FLANIGAN, J., and CAMPBELL and PYLE, Special Judges.

FLANIGAN, Judge.

A jury found defendant Michael Eugene Brayfield guilty of burglary in the second degree and stealing and fixed the punishment at two years for each offense. Defendant, on this appeal from the ensuing judgment and sentence, presents three assignments of error. None is valid and the judgment is affirmed.

Defendant's first contention is that the trial court erred in overruling defendant's motion, made at the close of voir dire examination, to discharge "the jury panel." The motion included an alternative request that nine named members of the panel be discharged for cause. The trial court overruled both prongs of the motion.

Defendant bases this contention upon certain information developed during voir dire. The panel members will be referred to by their respective names. Mr. DuFlot was acquainted with state's witness Brinkman. "It was a casual type acquaintance, not personal or social—I would know him if I saw him." DuFlot added that his acquaintance with the witness would not influence "my verdict in any way or my ability to hear the evidence."

Mr. Lawrence thought he may have done some business with Wells Tire Company (owner of the burglarized premises). He stated, however, that fact "would not influence me in any way in this case."

Mr. Mullis was acquainted with prosecutor Kelly. He stated, however, that fact

would not "guide my determination in this case." He said he knew Mr. Kelly "very very casually when I see him."

Defendant attacks the qualifications of six other members of the jury panel by saying "three separate pairs of jurors were acquainted with one another in varying degrees": Vermillion with McDaris, Patterson with Moore, and Minor with Melton.

Mrs. Vermillion was the next door neighbor of McDaris. "We have not even had a cup of coffee together." Mrs. Vermillion stated that her acquaintance with McDaris "would not have any effect on my deliberations." McDaris said the same thing.

Patterson and Mrs. Moore were members of the same church. Patterson stated that nothing in his acquaintance with Mrs. Moore "would cause me to give her word more weight than anybody elses in the jury room." Mrs. Moore made a similar statement.

Mr. Minor said that he and Mrs. Melton live in the same neighborhood and have "worked on election boards together." He said that that acquaintanceship would not affect "my deliberations." Mrs. Melton made a similar statement.

Although the record shows that DuFlot, Minor, and Vermillion sat as jurors, it does not disclose whether the defendant exercised a peremptory challenge with respect to any of the other six panel members.[1]

Defendant was entitled to a full panel of qualified jurors before being required to make his peremptory challenges. *State v. Cuckovich*, 485 S.W.2d 16, 22[10] (Mo. banc 1972). However, the duty of determining the qualifications of a venireman rests with the trial judge and his decision thereon will not be disturbed unless there is a clear abuse of discretion. *State v. DeClue*, 400 S.W.2d 50, 57[12] (Mo.1966); *Cuckovich*, at p. 22[11].

All doubt should be resolved in favor of the finding of the trial court. *State v.*

---

1. ". . . The contention pertaining to the use of a peremptory challenge to remove the juror is without substance because there is no

evidentiary basis in the record to support the claim; thus this claim is dismissed." *State v. Dethrow*, 510 S.W.2d 207, 209 (Mo.App.1974).

*Wilson,* 436 S.W.2d 633, 637[5] (Mo.1969). The opportunity of the trial court to observe the demeanor of the venireman in reaching an evaluation of his testimony touching his qualifications as a juror places the trial judge "in a far better position to make that determination than are we from the cold record." *Cuckovich,* at p. 23.

■ A prospective juror is not automatically disqualified because he is acquainted with a witness, *State v. Cashman,* 485 S.W.2d 431, 433[3] (Mo.1972), or because he is acquainted with, or has been a client of, the prosecuting attorney. *State v. Grant,* 394 S.W.2d 285, 289[8] (Mo.1965).

The law does not require a jury panel to be a gathering of total strangers. If a panel member were disqualified merely because he was acquainted with another member, it would be difficult, if not impossible, to muster a qualified array, especially in rural circuits.

■ Scrutiny of the entire voir dire examination has convinced this court that the trial court did not err in overruling the motion to discharge the jury panel[2] or to discharge for cause any of the nine panel members whose individual qualifications have been attacked. Defendant's first contention has no merit.

Defendant's second contention is that the trial court erred in overruling defendant's objection to a portion of the testimony of police officer George Brinkman, a witness for the state.

On direct examination Brinkman testified that he held the rank of corporal. The prosecutor then asked Brinkman if he was "being promoted to detective." Defendant's counsel objected on the ground of irrelevancy. The objection was overruled and the witness gave an affirmative answer.

In *State v. Foster,* 355 Mo. 577, 197 S.W.2d 313, 326[29] (1946) it is said:

"The following is stated in 70 C.J., p. 554, § 714: 'Questions to a witness directed toward aiding the jury in setting a proper estimate on his testimony are preliminary in their nature and may be properly asked, as, for example, questions which relate to the age of the witness, his residence, his occupation, and his condition in life, etc.' It is common practice."

■ Even if it be assumed, arguendo, that the attacked testimony was irrelevant, "a judgment is not to be reversed because of the admissions of irrelevant and immaterial evidence which clearly is not prejudicial." *State v. Talbert,* 454 S.W.2d 1, 3[4] (Mo.1970); *State v. Franklin,* 526 S.W.2d 86, 91[14] (Mo.App.1975). Defendant's second contention has no merit.

Defendant's third contention is that the trial court erred in receiving into evidence state's Exhibit A, an "impact wrench." Defendant bases this contention on the assertion "that the state failed to establish probable cause for the arrest of the defendant." At the time police officers arrested defendant, an hour or so after the commission of the burglary, the impact wrench was found in the car of which defendant was the driver and sole occupant.

That portion of the information which pleaded the stealing offense alleged that the article stolen was one "URYU impact wrench" and gave the name of its owner. Exhibit A was that wrench.

■ For two reasons defendant's third contention must fail. The first reason is that defendant did not file a motion to suppress the impact wrench as evidence although he "necessarily knew that as a part of the state's evidence it would be offered in evidence." *State v. Flynn,* 519 S.W.2d 10, 11[1] (Mo.1975). Missouri practice, with an exception not here material, requires a preliminary motion to suppress evidence claimed to have been the result of an unconstitutional search and seizure. *State v.*

---

**2.** "In order, however, to constitute a ground for a challenge to, or a motion to quash, the array, his objection must go to the whole array or panel, and not merely to individual persons on it; no objection lies to a venire because persons are wrongfully on it, since they may be excluded upon their examination on voir dire." 47 Am.Jur.2d Jury § 229, p. 817.

*Johnson,* 472 S.W.2d 393, 394[2] (Mo.1971), Rule 33.03 V.A.M.R. Appellant's third contention has not been preserved for appellate review for the reason that no motion to suppress was filed. *State v. Flynn,* supra, at p. 12[1].

The second reason for the invalidity of defendant's third contention is that defendant made no such objection to the admissibility of state's Exhibit A at the time it was offered and received into evidence. "Not only must defendant file a motion to suppress the controverted evidence, but he has the burden of presenting evidence to sustain his contentions." *State v. Holt,* 415 S.W.2d 761, 764[1, 2] (Mo.1967). He must also keep the question alive by timely objection. *State v. Yowell,* 513 S.W.2d 397, 402[2] (Mo. banc 1974). "The only exception under our procedural rule is where the defendant 'had no reason to anticipate the evidence would be introduced and was surprised.'" *State v. Yowell,* supra, at p. 402. The latter case, on the cited page, contains a discussion of the reason for the requirement that an objection be made to the introduction of the evidence at trial. See also *State v. Thompson,* 490 S.W.2d 50, 52[2] (Mo.1973).

The judgment is affirmed.

All concur.